Filed 9/22/25  P. v. Newton CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TRACY NEWTON, JR.,<br><br>    Defendant and Appellant. | 2d Crim. No. B334654<br>(Super. Ct. No. 2021025973)<br>(Ventura County) |

Tracy Newton, Jr. appeals an order of probation granted following his conviction of stalking, making criminal threats (two counts), and brandishing an imitation firearm.  (Pen. Code, §§ 646.9, subd. (a), 422, 417.4.)[1]

This appeal concerns Newton's acts, statements, voicemails, and text messages threatening the mother of his children.  On appeal, Newton raises contentions regarding

_____

[1] All statutory references are to the Penal Code unless otherwise stated.

evidentiary rulings, jury instructions, and alleged prosecutorial misconduct, among other arguments. He asserts that the trial court's instructional errors and the alleged prosecutorial misconduct denied him a fair trial, due process of law, and a unanimous jury verdict, pursuant to the federal and state Constitutions. We reject these contentions and affirm.

*FACTUAL AND PROCEDURAL HISTORY*

Sarah Ceranek and Newton are parents to two minor children. In September 2020, Ceranek and the children moved into her sister's home. She considered herself separated from Newton, but she and the children continued to interact with him. On July 4, 2021, Ceranek and Newton had an argument inside her vehicle in the presence of the children. Ceranek called the police from her car.

From July 4, 2021, until August 13, 2021, Ceranek did not allow Newton to visit the children. Newton would appear at the sister's home and argue with Ceranek. On August 13, 2021, Newton sent Ceranek text messages telling her that she would see her dead father soon, and he (Newton) wanted her dead. The messages were accompanied by a photograph of a firearm held by a hand with two rings. At trial, the prosecutor introduced the text messages and the photograph into evidence.

Newton also left a voicemail for Ceranek stating that he wanted to cut her throat. On August 19, 2021, Ceranek filed a police report against Newton to obtain a restraining order. Subsequently, she obtained an emergency protective order.

On August 21, 2021, Simi Valley Police Officer Joshua Mirabella spoke with Ceranek over the telephone and in person. Ceranek informed Mirabella that she was frightened of Newton and that he had been harassing her. She also reported that he

2

had been previously physically violent with her. Ceranek provided Mirabella with approximately 43 voicemail messages Newton had left her during the prior week, a photograph of the firearm he texted, and surveillance video footage in which Newton is seen in front of the sister's home. Ceranek identified the hand holding the firearm as Newton's hand, based upon the rings.

On September 10, 2021, Newton appeared outside the sister's home and told Ceranek he wanted to visit the children. Ceranek and Newton shouted at each other and Ceranek's brother-in-law came outside. Newton then returned to his vehicle and Ceranek saw a firearm laying on the front seat. On September 10, 2021, Simi Valley Police Officer James Wismar responded to a call from Ceranek. She informed him that Newton approached her and then removed a firearm from his waistband and held it alongside his body.

During Newton's confinement in county jail, he placed telephone calls to Ceranek. The jail conversations were recorded and played at trial. During the conversations, Ceranek expressed fear of Newton.

Ceranek refused to testify at trial and the trial court declared that she was legally unavailable pursuant to Evidence Code section 240. For that reason, Ceranek's preliminary examination testimony was read at trial.

The jury convicted Newton of stalking, making criminal threats (two counts), and brandishing an imitation firearm. (§§ 646.9, subd. (a), 422, 417.4.) The trial court suspended imposition of sentence and placed Newton on felony probation for 36 months with terms and conditions.

Newton appeals and raises issues regarding evidentiary rulings, proof of the imitation firearm, jury instructions, and asserted prosecutorial misconduct.

*DISCUSSION*

*Right to Confrontation*

Newton contends that the trial court erred by admitting into evidence Ceranek's hearsay statements in violation of his constitutional rights pursuant to the Sixth Amendment Confrontation Clause and the California Constitution. (*Crawford v. Washington* (2004) 541 U.S. 36, 48 [Sixth Amendment precludes admission of testimonial statements of a witness who did not appear at trial unless the witness was unavailable to testify and the defendant had a prior opportunity for cross-examination].) Specifically, he objects to Ceranek's statements to police officers, the 911 dispatch operator, and to himself during the jail telephone calls he placed to her.

The confrontation clause does not prohibit the prosecution from impeaching the former testimony of its own unavailable witness with his or her inconsistent statements, providing the statements are admitted only for impeachment purposes. (*People v. Blacksher* (2011) 52 Cal.4th 769, 808.) Evidence Code sections 1235 and 770 permit admission of a witness's prior inconsistent statements.

Also, a spontaneous statement is admissible as an exception to the hearsay rule providing certain foundation requirements are satisfied. (Evid. Code, § 1240.)

Here Ceranek, an unavailable witness at trial, testified at the preliminary examination and denied being in fear of Newton. She stated otherwise to police officers earlier, however, although she denied making such statements. Thus, the trial court did not

4

abuse its discretion by permitting Ceranek's statements to Mirabella that she feared Newton – that he would physically harm her or take the children.  Likewise, Ceranek's statements to Wismar that she feared Newton because he displayed a firearm, threatened to kill her, and threatened to take the children, were admissible as inconsistent statements.

Ceranek's 911 telephone call was properly admitted as a spontaneous statement.  (*People v. Banos* (2009) 178 Cal.App.4th 483, 486-488 [911 call to report ongoing emergency is nontestimonial statement that does not offend confrontation rights].)  The trial court overruled Newton's objection after listening to the call and finding that the call was made within two minutes of an incident with Newton and that Ceranek stated that she was shaking during the call.

The trial court also did not abuse its discretion by admitting evidence of Ceranek's statements to Newton made during their recorded jail conversations.  Ceranek admitted that she feared him during these conversations.  These statements were inconsistent with her testimony at the preliminary examination.

*Sufficiency of Evidence*

Newton argues insufficient evidence supports the charge of brandishing an imitation firearm.  Specifically, he contends that the prosecutor failed to establish that the object was a replica firearm as opposed to an actual firearm.

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a

reasonable doubt. (*People v. Collins* (2025) 17 Cal.5th 293, 307; *People v. Thomas* (2023) 14 Cal.5th 327, 377,) We do not redetermine the weight of the evidence or the credibility of witnesses. (*People v. Albillar* (2010) 51 Cal.4th 47, 60; *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact"].) We must accept logical inferences that the trier of fact might have drawn from the evidence although we may have concluded otherwise. (*People v. Rivera* (2019) 7 Cal.5th 306, 331.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Albillar*, at p. 60.)

Prior to the confrontation on September 10, 2021, Newton sent Ceranek a threatening text message that included a photograph of a firearm. The trial court admitted the photograph into evidence. In September 2021, Newton drove to the home where Ceranek and the children stayed, confronted her outside, and lifted his shirt to reveal a firearm tucked into his waistband. Ceranek admitted that the gun appeared to be the same firearm as in the photograph. This evidence supports Newton's conviction of brandishing an imitation firearm. (§ 16700, subd. (a)(1) [defining "imitation firearm" as a "device that is so substantially similar in coloration and overall appearance to an existing firearm as to lead a reasonable person to perceive that the device is a firearm"]; *People v. Radovich* (1932) 122 Cal.App. 176, 180-181 [gun offered into evidence need not be positively identified as the weapon used in committing the crime].)

*Claims of Instructional Error*

*I.*

Newton argues that the trial court erred by refusing his instruction that he could not be convicted for the constitutionally protected activity of visiting his children and their mother. He asserts that the refusal denied him due process of law, a fair trial, and the right to present a defense.

The trial court instructed with the pattern instruction CALCRIM No. 1301 but refused Newton's request to add this bracketed portion of the instruction: "A person is not guilty of stalking if [his] conduct is constitutionally protected activity."

The crime of stalking applies to anyone who "willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for their safety, or the safety of their immediate family." (§ 646.9, subd. (a).) A person "harasses" another if he or she "engages in a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose." (*Id.,* subd. (e).) A "course of conduct" involves "two or more acts occurring over a period of time, however short, evidencing a continuity of purpose." (*Id.,* subd. (f).) Constitutionally protected conduct, however, is not included within the meaning of a course of conduct. (*Ibid.*)

The trial court properly instructed the jury because Newton's behavior did not constitute constitutionally protected activity. (*People v. Toledo* (2001) 26 Cal.4th 221, 233 [threats to commit a crime that will result in death or great bodily injury and are unequivocal, unconditional, immediate, and specific constitute conduct that falls outside the protection of the

7

Constitution; *People v. Borrelli* (2000) 77 Cal.App.4th 703, 716 [constitutionally protected activity "does not include the right to repeatedly invade another person's constitutional rights of privacy and the pursuit of happiness through the use of acts and threats that evidence a pattern of harassment designed to inflict substantial emotional distress"].)

Moreover, the instruction as given sufficiently protected Newton against a jury finding that he violated the law although he may have been engaging in constitutionally protected activities. CALCRIM No. 1301 correctly instructed that harassment that is prohibited by the statute means "a knowing and willful course of conduct directed at a specific person that seriously annoys, alarms, torments, or terrorizes the person and that serves no legitimate purpose." The course of conduct is also defined as serving "no legitimate purpose." If the jury had found that Newton had a legitimate purpose behind his actions, the elements of the stalking statute would not have been established.

## II.

Newton claims the unanimity instruction given (CALCRIM No. 3500 as modified) failed to inform the jury that it must "conduct a unanimity analysis once per count" concerning the two charged counts of making criminal threats.

There is no error. CALCRIM No. 3500 informed the jury: "You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts for each count, and you all agree on which act he committed." During argument, the prosecutor selected these two statements for the two counts of making criminal threats: "I'm going to kill you. You're dead" and "I'm going to cut your throat." The felony information charged the two threats as made on

8

August 13, 2021, and August 19, 2021. Prior to closing arguments, the trial court reminded the jury that its verdict on each count must be unanimous and that each count is a separate crime. There is not "a reasonable likelihood the jury applied the challenged instruction in an impermissible manner." (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1220, overruled on other grounds by *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.)

III.

Newton also argues that the trial court erred by instructing with the bracketed portion of CALCRIM No. 358 which states: "Consider with caution any statement made by [the] defendant tending to show [his] guilt unless the statement was written or otherwise recorded." Newton claims the instruction "directed the jury to believe [the other] recorded statements as indicative of [his] guilt without allowing for the possibility that the context of the statements – such as [his] emotional state or the strained relationship – could have cast doubt on their seriousness."

The complete instruction given, including the bracketed portion, was proper because Newton made inculpatory unrecorded statements, such as when he confronted Ceranek in front of her sister's home. Moreover, Newton did not object to the instruction and the record does not disclose whether he requested it. (*People v. Diaz* (2015) 60 Cal.4th 1176, 1186 [bracketed portion of CALCRIM No. 358 should be given only if requested by defendant and there is evidence of unrecorded out-of-court incriminating statements].) In any event, the bracketed portion does not violate federal constitutional rights to due process or lower the prosecution's burden of proof. (*Diaz*, at p. 1195; *People v. Xiong* (2020) 54 Cal.App.5th 1046, 1081.)

9

Newton contends that the prosecutor committed prejudicial misconduct by stating during summation, "I don't have to prove that [the gun] was a replica gun. I have to prove to you that Sarah Ceranek thought it was a gun. . . . So for a replica gun, it's whether or not she perceived it as a gun and we know that she did."

Newton has forfeited this claim because he did not object to this alleged misstatement of law and request a curative instruction. (*People v. Peterson* (2020) 10 Cal.5th 409, 464-465.) He also fails to show that so doing would have been futile. (*Ibid.*)

In any event, section 417.4 is violated when someone "draws or exhibits an imitation firearm, as defined in subdivision (a) of Section 16700, in a threatening manner against another in such a way as to cause a reasonable person apprehension or fear of bodily harm." Section 16700, subdivision (a)(1) defines "imitation firearm" as a toy gun, replica of a firearm "or other device that is so substantially similar in coloration and overall appearance to an existing firearm as to lead a reasonable person to perceive that the device is a firearm." Here the jury received instruction with CALCRIM No. 985, defining an imitation firearm in terms following section 16700, subdivision (a).

Newton also argues that the prosecutor committed prejudicial misconduct by stating during summation that "beyond a reasonable doubt" is "the same burden of proof that is applied in every single charge in every single case across the United States from misdemeanor, infraction, court trial, whatever it is." He contends that the prosecutor trivialized the burden of proof by equating it to the standard used in minor administrative matters,

such as license suspension.  (The prosecutor did not mention administrative proceedings or license suspension hearings.)

Newton has forfeited this claim because he did not object to this alleged misstatement of law and request a curative instruction.  (*People v. Peterson*, *supra*, 10 Cal.5th 409, 464-465.)  "To preserve a claim for review, a defendant must object and ask that the jury be admonished concerning the misconduct."  (*Id.* at p. 464.)

Forfeiture aside, there is no prejudicial error.  The trial court properly instructed with the pattern instruction regarding reasonable doubt, both before and after the presentation of evidence, as well as the instruction that the attorneys' comments are not evidence and the instructions must be followed.  (CALCRIM Nos. 200, 220.)  The jury received written instructions prior to commencing deliberations.  (*People v. Cortez* (2016) 63 Cal.4th 101, 133 [rejecting a misconduct claim challenging prosecutor's comments on reasonable doubt because, in part, the court properly defined reasonable doubt, and jury had written instructions during deliberations].)  The prosecutor also stated during summation that he had a high burden of proof which was the beyond a reasonable doubt standard.

To prevail on a claim of prosecutorial error based on remarks to the jury, the defendant must show a reasonable likelihood that the jury understood or applied the complained-of comments in an improper or erroneous manner.  (*People v. Centeno* (2014) 60 Cal.4th 659, 667.)  In our assessment of prosecutorial error, we do not lightly infer that the jury drew the most damaging rather than the least damaging inferences from the prosecutor's statements.  (*Ibid.*; *People v. Price* (2017) 8 Cal.App.5th 409, 460-461.)  Although a defendant singles out

words and phrases of claimed misconduct, we view the statements in the context of the whole argument. (*People v. Dennis* (1998) 17 Cal.4th 468, 522.)

Newton has not established that the jury understood or believed the same standard used in license suspension cases – a preponderance of the evidence – applied here.

*Cumulative Error*

Finally, Newton contends that cumulative error warrants reversal. There is no error to cumulate, however, and we reject this assertion. (*People v. Capers* (2019) 7 Cal.5th 989, 1017 [cumulative error occurs "when the combined effect of the trial court's errors is prejudicial or harmful to the defendant"]; *People v. Lopez* (2018) 5 Cal.5th 339, 371 ["Because we have found no error, there is no cumulative prejudice to evaluate"].)

*DISPOSITION*

The order of probation is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

BALTODANO. J.

12

Catherine M. Voelker, Judge

Superior Court County of Ventura

_____

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Seth P. McCutcheon, Deputy Attorneys General, for Plaintiff and Respondent.